IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BROWN, | No. C 09-05881 SI |
| Plaintiff, | **ORDER DENYING MOTION TO STAY AND GRANTING MOTION TO DISMISS** |
| v. | |
| FREDERIC H MOLL et al., | |
| Defendants. | |

Currently before the Court is defendants' motion to stay, or in the alternative, to dismiss the case for lack of standing and failure to state a claim. This matter is currently set for hearing on July 23, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, the Court DENIES defendants' motion for a stay and GRANTS defendants' motion to dismiss.

**BACKGROUND**

Plaintiff filed this shareholder derivative action on December 9, 2009, against "nominal defendant" Hansen Medical, Inc. ("Hansen"), Frederick H. Moll, Steven M. Van Dick, Gary C. Restani, seven current members of the Hansen's Board of Directors (Freund, Shapiro, Lowe, McConnell, Hirsch, Mandato, Hykes), and Christopher Sells (collectively "defendants"). Plaintiff alleges that Hansen, which builds medical robots, improperly accounted for revenue from the sale of its primary product, the Sensi system. Complaint ¶ 49. As a result, Hansen was required to restate and adjust various financial statements from 2007 through 2009. *Id.*, ¶¶ 4, 23. Plaintiff alleges that the individual defendants caused Hansen to engage in the improper revenue recognition conduct, *id*. ¶ 76, 77, and caused various false

and misleading disclosures to be made. *Id*. ¶¶ 50-65. Plaintiff also alleges that defendant Restani engaged in insider trading. *Id*. ¶¶ 45-48. Based on these allegations, plaintiff pleads claims for breach of fiduciary duty, unjust enrichment, and waste of corporate assets related to the improper revenue recognition conduct, as well as claims related to Restani's alleged insider trading.

Defendants first move to stay this case under the *Colorado River* doctrine, in favor of two consolidated shareholder derivative actions pending in the Superior Court for the County of Santa Clara. In the alternative, defendants move to dismiss Brown's complaint for lack of standing based on Brown's failure to first demand action from the corporation's board of directors and failure to adequately plead demand futility. Finally, defendants move to dismiss the case for failure to state a claim as a matter of law.

## DISCUSSION

**1. Motion to Stay**

The defendants first move to stay this case under the *Colorado River* doctrine, in favor of two, consolidated shareholder derivative actions that were filed in November 2009 in the Superior Court for Santa Clara County. *See* Declaration of Lucy Wang, Exhs. 5-7.[1] Generally, considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" may counsel granting a stay when there are concurrent state proceedings involving the same matter as in the federal district court. *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The threshold for applying the *Colorado River* doctrine is whether the two cases are substantially similar. Substantial similarity does not mean that the cases must be identical. *Nakash v. Marciano*, 882 F. 2d 1411, 1416 (9th Cir. 1989).

However, "[o]nly exceptional circumstances justify such a stay, and whether these circumstances exist is determined by weighing a complex of factors." *Intel Corp. v. Advanced Micro Devices*, 12 F.3d 908, 912 (9th Cir. 1993). The Ninth Circuit has held that the existence of a substantial doubt as to

---

[1] Defendants request that the Court take judicial notice of various filings made by Hansen with the Securities and Exchange Commission ("SEC"), Hansen's Certificate of Incorporation, two state court complaints, and an order consolidating those complaints. [Docket No. 32]. The Court GRANTS defendants' request for judicial notice of these public records.

2

whether the state proceedings will resolve the federal action is a dispositive factor against a stay or dismissal under the *Colorado River* analysis. *See Intel Corp.*, 12 F.3d at 913; *see also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28 (1983). The non-dispositive factors enumerated in *Colorado River* and subsequent Ninth Circuit cases are: (1) whether the state court first assumed jurisdiction over property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; (7) whether exercising jurisdiction would promote forum shopping. *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002).

Here there is no dispute that the state actions are substantially similar to this action such that their resolution would resolve all of the claims in this action. Instead, the parties' dispute centers on the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained by the concurrent forums, and concerns of forum shopping. As plaintiff points out, the fact that parallel proceedings exist is not itself dispositive, but there must be exceptional circumstances to justify a "special concern" about piecemeal litigation. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). Defendants argue that the risk of inconsistent rulings is particularly problematic in the derivative context and the derivative nature of the underlying actions creates a special concern about piecemeal litigation. Defendants rely on *Clark v. Lacy*, 376 F.3d 682, 687-88 (7th Cir. 2004) for support. However, the *Clark* Court found only that the derivative nature of the state and federal lawsuits in that case supported a finding that the actions were parallel. *Id.* at 686. The Court did *not* find that the derivative nature of the lawsuits created any special or unique circumstances justifying a special concern about piecemeal litigation or otherwise supported a stay in the federal case.

Instead, the Seventh Circuit affirmed the district court's decision to abstain in deference to a parallel derivative action in state court, in part, because "[i]n this case, it makes more sense to allow a New York state court to resolve whether under New York law pre-suit demand was excused and whether a claim for breach of fiduciary duty has been stated against defendants." *Id.* at 688. Here, unlike *Clark*, the issue of the futility of a pre-suit demand is one of Delaware, not California, law. Therefore, there is no special risk of inconsistency or any efficiency to be gained by staying this case

3

1 for the Superior Court's adjudication of that or any other issue.

2 Defendants also argue that the interests of efficient and consistent judicial administration favor a stay not only because the state court action commenced earlier but also because the state court action includes Hansen's auditor, PwC. However, the fact that the now-consolidated state court action commenced a few weeks earlier than this case, does not weigh in favor of a stay. *See, e.g.*, *Clark,* 376 F.3d at 688 (where cases filed a few weeks apart, the order of jurisdiction factor was neutral). This is particularly true here, as no substantive proceedings have taken place in the consolidated state court action. *See* Declaration of Frank J. Johnson, Ex. A.[2]

Finally the fact that PwC is a defendant in the consolidated state court actions does mean that the state court proceedings are more comprehensive, but that does not mean that defendants' rights cannot be fully protected in this federal proceeding. *Cf. Travelers*, 914 F.2d at 1369 (rejecting claim that state court defendant's absence from federal case raised possibility of exceptional circumstances justifying a stay, because the absent state court defendant's liability was only a "theoretical possibility"). If PwC's role in the alleged improper revenue recognition is relevant, discovery will no doubt be pursued with respect to PwC's role and responsibilities.

Defendants have failed to demonstrate that exceptional circumstances exist that would justify a stay under the *Colorado River* doctrine. The request for a stay is DENIED.

**2.     Demand Futility**

Defendants move to dismiss on the ground that plaintiff lacks standing to pursue this derivative action because he failed to make a demand to Hansen's Board of Directors to take action on the corporate claim or plead sufficient facts demonstrating that such a demand would have been futile. Both

---

[2] Plaintiff requests the Court take judicial notice of various court filings, including the docket from the pending consolidated state court action as well as an ADR stipulation in that case, and a complaint and stipulation from a pending securities class action filed against Hansen in federal district court (the "*Curry*" action). [Docket No. 42]. Defendants object to the request for judicial notice of the *Curry* complaint to the extent plaintiff attempts to rely on confidential witness statements included in that document to support his breach of fiduciary duty and fraud claims here. [Docket No. 44]. The Court GRANTS plaintiff's request for judicial notice. The will not take judicial notice of the truth of the matters alleged in the *Curry* complaint, but will take notice of the fact that it has been filed and the scope of the claims alleged therein.

4

parties agree that in order to show demand futility, plaintiff must allege "particularized" facts showing that more than half of the board members have a personal and substantial interest in the subject matter of the proposed lawsuit that renders them unable to exercise independent judgment in responding to a demand. *See Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993) (plaintiff needs to show facts that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."). If plaintiff can show that more than half of the directors are "interested," then demand will be deemed futile and excused. *Id.*

The seven individuals who were on the board at the time the complaint was filed are defendants Hirsch, Mandato, Hykes, Freund, Shapiro, Lowe and Moll. Compl. ¶ 87. As defendants point out, facts specific to each director must be alleged to support a finding of demand futility. *See, e.g., Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007).

### A. Defendants Hirsch, Mandato, Hykes

Defendants argue that there are no particularized allegations in the complaint with respect to directors Hirsch, Mandato and Hykes other than they were directors of the company. Plaintiff responds that where, as here, the information about the misconduct in question pertains to a company's core business, courts impute knowledge of that information to each board member. Plaintiff relies on *Pfeiffer v. Toll*, 989 A.2d 683, 692 (Del. Ch. 2010) to support his inference argument. In *Pfeiffer*, the Court found that inferring outside directors, who were alleged to have been involved in insider trading, had knowledge of inflated earnings projections was appropriate where the outside directors should have known about the company's false earning projections because the projections contradicted other statements made by the company and the company's own internal metrics. Further, the Court noted that the remarkably high earning projections were not only related to the "core operations" of the company, but were also discussed on earnings calls, during media appearances, and in interviews. *Id.* at 692-93. Here, plaintiff's complaint fails to allege that *issues* with Hansen's revenue recognition policy or accounting methods were discussed by the Board. The fact that revenues were discussed and touted in press releases – revenues that plaintiff claims were improperly accounted for – cannot imply that the

Board members knew of the alleged accounting problems that led to improperly recognized revenue. Moreover, there are no allegations that internal company metrics or information discussed at the Board level contradicted the earnings statements contained in Hansen's SEC filings or press releases.[3]

Plaintiff also argues that the directors are "interested" because they face a substantial likelihood of personal liability for breaches of fiduciary duty and violations of the securities laws based on their mismanagement of Hansen's affairs, that they caused Hansen to disseminate false and misleading information, and that they allowed defendant Christopher Sells – who was allegedly responsible for the accounting regularities – to resign rather than terminating him for cause. *See* Oppo. at 15; Complaint ¶¶ 23, 37-38, 93-96.

With respect to allegations of personal liability creating an interest which would make demand futile, Delaware courts require a plaintiff to set forth facts establishing that personal liability is not "a mere threat" but instead "a substantial likelihood." *See, e.g., Rales*, 634 A.2d at 936. Defendants argue that the cursory allegations above cannot show a substantial likelihood of personal liability here, because Hansen's certificate of incorporation contains an "exculpatory" provision that effectively insulates its directors from breaches of the duty of care. *See* Motion at 10; Wang Decl., Ex. 4 Article VI. Under Delaware law, "in the event that the charter insulates the directors from liability for breaches of the duty of care, then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts." *Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 501 (Del. 2003). In essence, the exculpatory clause limits directors' liability to actions that are made in bad faith or constitute intentional misconduct. *Guttman*, 823 A.2d at 503-06; *see also In re Sagent Tech.*, 278 F. Supp. 2d 1079, 1095 (N.D. Cal. 2003) ("to the extent that the complaint

---

[3] Plaintiff's other cases are likewise inapposite. *In No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 943 (9th Cir. 2003), considering section 10(b) and 10b-5 claims under PSLRA, the Ninth Circuit found it would be "absurd" to suggest that the Board of Directors would not discuss either the repurchasing authorization for millions of dollars worth of stock or the Federal Aviation Administration's investigation where the FAA had indicated that it was considering penalties of up to $11 million. In *In re Biopure Corp. Derivative Litig.*, 424 F. Supp. 2d 305, 307 (D. Mass. 2006), the court inferred the directors' knowledge of significant problems with the company's product, including a hold by the Food and Drug Administration. Here plaintiff does not contend there was a serious problem with the Sensi system itself, but rather with the way individuals within the company were recognizing revenue on sales of the product.

6

alleges any negligent breach of fiduciary duty, such a claim is precluded by the exculpatory clause in [defendant's] articles of incorporation.").

Plaintiff argues that defendants are not afforded protection under the exculpatory clause because the complaint adequately alleges bad faith, disloyalty or other "exceptional circumstances." Oppo. at 13, n 6. The Court, however, disagrees. With respect to plaintiff's allegations regarding the mismanagement and the accounting regularities, there are no particularized facts that demonstrate bad faith. *See, e.g., In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 127 (Del. Ch. 2009) (allegations the board members "consciously ignored these warning signs or knowingly failed to monitor the Company's risk in accordance with their fiduciary duties . . . are not sufficient to state a claim for failure of oversight that would give rise to a substantial likelihood of personal liability, which would require particularized factual allegations demonstrating bad faith by the director defendants.").

The only particularized allegation of bad faith conduct plaintiff points to is that defendants let Christopher Sells resign and "essentially bestowed gifts on him" when there were grounds to terminate him for cause. Complaint ¶¶ 23, 93. This conduct, plaintiff alleges, was a waste of corporate assets. *Id.* ¶ 93. Plaintiff's attempt to equate these allegations with intentional bad faith, however, fails. In *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275 (Del. Ch. 2003), the complaint alleged that the board approved the hiring of a president, even though they had only seen an incomplete summary of the employment agreement that omitted material information. The complaint also alleged that the CEO and a director granted the president a no-fault termination without the required board approval, and that the CEO and director accelerated the no-fault termination without any action before or after the fact by the board, all of which resulted in the president earning $38 million dollars in cash and $3 million dollars in options for less than a year of work. *Id.* at 281-85. The Court found that these allegations supported an argument that the board failed to "exercise[] *any* business judgment or made *any* good faith attempt to fulfill the fiduciary duties they owed to Disney and its shareholders." *Id.* at 287 (emphasis in original). The allegations here – that the board allowed Sells to resign instead of terminating him for cause and entered into a consulting agreement with Sells through the end of 2009 – do not on their own rise above the level of negligence to the level of demonstrating the lack of any business judgment or lack of any good faith attempt to fulfill the fiduciary duties owed by the Board to Hansen and its

7

shareholders.

Finally, plaintiff argues that because Hansen's directors' and officers' liability policy contains a "insured versus insured exclusion," which does not cover a derivative action, all of Hansen's board members are conflicted and will likely reject all demands to commence a derivative action. Complaint ¶¶ 98-99. Plaintiff does not contest defendants' authorities holding that an "insured verses insured" exclusion cannot, standing alone, satisfy the pleading demand for futility. *See, e.g., Jones ex rel. CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1341 (D. Ariz. 2007) (noting that courts "have routinely rejected" the argument that an "insured versus insured exclusion" demonstrates directors inability to independently consider a demand); *In re InfoSonics Corp. Derivative Litig.*, 2007 U.S. Dist. LEXIS 66043, *20 n.1 (S.D. Cal. Sept. 4, 2007) (same). Instead, plaintiff argues that the insurance exclusion standing together with the other fact-specific allegations in the Complaint demonstrate demand futility. Oppo. at 15-16. The Court, however, has already rejected the argument that the other facts alleged demonstrate demand futility with respect to defendants Hirsch, Mandato and Hykes.

### B. Defendants Freund, Shapiro, Lowe

In addition to the arguments raised and rejected above, plaintiff argues that defendants Freund, Shapiro and Lowe, through their positions on the audit committee of Hansen's board, knowingly and recklessly reviewed and approved Hansen's quarterly and annual statements for 2008 and 2009. Complaint ¶¶ 32, 91. Plaintiff also alleges that the audit committee defendants knowingly and recklessly reviewed and approved ineffective financial reporting internal controls which defendant Moll admitted were ineffective. *Id.* ¶ 91.

As with the allegations addressed above, the Court finds that plaintiff's conclusory allegations are insufficient to raise a reasonable doubt that the members of the audit committee acted in good faith. *See, e.g., Guttman v. Jen-Hsun Huang*, 823 A.2d 492, 507 (Del. Ch. 2003) (explaining that contentions that "the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation" are the type of particularized factual allegations that support a claim of bad faith);

8

*see also In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 128 (Del. Ch. 2009) (noting that plaintiffs failed to plead particularized facts suggesting that the Board was presented with "red flags" alerting it to potential misconduct and "plaintiffs' allegations do not even specify how the board's oversight mechanisms were inadequate or how the director defendants knew of these inadequacies and consciously ignored them.").

The cases plaintiff relies on support this conclusion. For example, in *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 222 (S.D.N.Y. 1999), the Court found that while outside directors who sign off on financial statements can be presumed to "have the power to direct or cause the direction of the management and policies of" the corporation, the complaint still failed to allege particularized facts as to the directors' "culpable participation" in the underlying fraud allegations. *Id.* In *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007), a stock options backdating case, not only did the plaintiff identify each of the options they challenged and the directors who approved or received them, but the Court also recognized that "[b]ackdating options qualifies as one of those 'rare cases [in which] a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.'" *Id.* at 355-56 (citing *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984)). There are no allegations in this case demonstrating that the improper revenue recognition at issue was so egregious or its existence so "clear on its face" that audit committee approval of financial statements and audit controls would suffice to show bad faith on the part of the audit committee members.[4]

In light of the Court's finding that plaintiff has failed to plead sufficient particularized facts showing that a majority of Hansen's board was not disinterested, plaintiff has failed to demonstrate demand futility. The Court, therefore, dismisses the Complaint with leave to amend to allow a demand

---

[4] Plaintiff's reliance on *In re Taser Int'l S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 11554 (D. Ariz. Mar. 17, 2006), which is designated not for publication, is similarly misplaced. There the Court found that plaintiff's allegations that as a result of information actually received by the audit committee, showing declining sales, those directors were aware of the company's true operating condition when they caused the company to raise its growth guidance to 175%, combined with allegations that a majority of outside directors sold 100% of their stock within weeks of the allegedly misleading announcement, were sufficient to find that the directors were not disinterested. *Id.* at *30-32.

9

to be made or plead additional particularized facts demonstrating demand would have been futile.[5]

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to stay but GRANTS the motion to dismiss with leave to amend. Any amended complaint should be filed no later than **August 9, 2010**

**IT IS SO ORDERED.**

Dated: July 21, 2010

SUSAN ILLSTON
United States District Judge

---

[5] As such, the Court need not reach the issue of whether defendant Moll is a disinterested director for purposes of demand futility or whether the issue of demand futility has been mooted by the demands made in the consolidated cases pending in the Superior Court of Santa Clara County. Similarly, the Court need not reach defendants' alternate ground for dismissal, that the Complaint should be dismissed for failure to state a claim. However, if plaintiff chooses to file an amended complaint, that pleading can address any deficiencies that may exist with respect to his breach of fiduciary duty, corporate waste, unjust enrichment or insider trading claims.