IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BROWN,<br><br>    Plaintiff,<br><br>  v.<br><br>FREDERIC H MOLL, et al.,<br><br>    Defendants.<br>_____/ | No. C 09-05881 SI<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS** |

Defendants' motion to dismiss plaintiff's Amended Complaint came on for hearing on November 5, 2010. After considering the pleadings submitted and argument made, the Court GRANTS defendants' motion to dismiss and dismisses plaintiff's complaint without leave to amend.

**BACKGROUND**

Plaintiff filed this shareholder derivative action on December 9, 2009, against "nominal defendant" Hansen Medical, Inc. ("Hansen"), Frederick H. Moll, Steven M. Van Dick, Gary C. Restani, seven members of the Hansen's Board of Directors (Freund, Shapiro, Lowe, McConnell, Hirsch, Mandato, Hykes), and Christopher Sells (collectively "defendants"). Plaintiff alleges that Hansen, which builds medical robots, improperly accounted for revenue from the sale of its primary product, the Sensi system. Amended Complaint ¶¶ 4, 18, 92. As a result, Hansen was required to restate and adjust various financial statements from 2007 through 2009. *Id.*, ¶¶ 9-10. Plaintiff alleges that the individual defendants caused Hansen to engage in the improper revenue recognition conduct, *id.* ¶ 8, 92, and caused various false and misleading disclosures to be made. *Id.* ¶¶ 99-117. Plaintiff also alleges that defendant Restani engaged in insider trading. *Id.* ¶¶ 51-54. Based on these allegations, plaintiff pleads

claims for breach of fiduciary duty, unjust enrichment, and waste of corporate assets related to the improper revenue recognition conduct, as well as claims related to Restani's alleged insider trading.

**DISCUSSION**

Under Delaware law, "the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). In order to show demand futility, plaintiff must allege "particularized" facts showing that more than half of the board members have a personal and substantial interest in the subject matter of the proposed lawsuit that renders them unable to exercise independent judgment in responding to a demand. *Rales,* 634 A.2d at 934 (plaintiff needs to show facts that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."). If plaintiff can show that more than half of the directors are "interested," then demand will be deemed futile and excused. *Id.* Facts specific to each director must be alleged to support a finding of demand futility. *See, e.g., Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007). The seven defendants who were on the board at the time the complaint was filed are defendants Hirsch, Mandato, Hykes, Freund, Shapiro, Lowe and Moll ("Directors"). *See* Original Complaint ¶ 87; AC ¶¶ 20, 23, 24, 25, 27 - 29.[1]

In ruling on defendants' prior motion to dismiss, the Court found that plaintiff had failed adequately to plead that a majority of the Directors were sufficiently "interested" to excuse demand, but granted plaintiff leave to amend to attempt to add particularized facts – as opposed to conclusions – to support his futility allegations. The Court rejected plaintiff's generalized allegations that since the revenue recognition information at issue concerned Hansen's "core" business – sales and installation of the Sensi system – knowledge of the improper revenue recognition scheme could be imputed to the outside Directors. *See* July 21, 2010 Order at 5-6. The Court also found that plaintiff had failed to plead

---

[1] "Outside Directors" refers to all of these directors except Moll, who is Hansen's CEO.

2

any facts showing that the Outside Directors faced a "substantial likelihood" of personal liability as a result of their actions, as plaintiff failed to plead any particularized facts to show that any Outside Director acted in bad faith or with intentional misconduct. *Id*. at 6-9. Plaintiff filed his Amended Complaint on August 9, 2010. Defendants now move to dismiss the Amended Complaint, arguing that plaintiff has not cured the deficiencies identified by the Court.

### A. Allegations with Respect to All Directors

Plaintiff asserts that he has made sufficient allegations with respect to all of the Directors because: (1) the misconduct related to Hansen's "core product," and therefore knowledge of the improper revenue recognition scheme can be imputed to defendants; (2) the Directors failed to terminate and instead gave a generous separation agreement to defendant Sells – the employee who "largely orchestrated" the improper revenue recognition scheme, *see* AC ¶ 7 – and, therefore, face personal liability for waste of corporate assets; and (3) Hansen's directors and officers liability policy's "insured versus insured exclusion" means that each director faces substantial financial liability from this derivative action.

Each of these arguments, however, was rejected by the Court on the prior motion to dismiss. Plaintiff has not alleged any new facts to cause the Court to revisit that conclusion. With respect to the "core product" argument, the Court previously found that the cases which allow knowledge of fraudulent conduct to be inferred to members of the board of directors where the fraud concerned the "core operations" of the business are distinguishable because there are no *facts* alleged here that the Sensi system itself had problems or that the Outside Directors had (or should have had) knowledge of defendant Sells' improper revenue accounting scheme which resulted in the restatement. *See* Order at 5-6 & n.3 (distinguishing plaintiff's core business cases, including *Pfeiffer v. Toll*, 989 A.2d 683, 692 (Del. Ch. 2010); *In No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 943 (9th Cir. 2003); *In re Biopure Corp. Derivative Litig.*, 424 F. Supp. 2d 305,

307 (D. Mass. 2006)).[2]

Plaintiff's "core business" argument is based on the following allegations: Hansen is a small company that has one "core product," the Sensi system; that Hansen sells two or three systems a month; and under its revenue recognition policy can only recognize revenue when the systems have been fully installed and the end users trained. AC ¶ 3, 7. As a result, plaintiff asserts, the method for recognizing revenue is of "critical importance" for the company and that "revenue recognition issues" were discussed at board meetings. AC ¶¶ 70-73, 134. In addition, at oral argument, plaintiff identified the following allegations in support of his argument:

1. That defendant Moll (Hansen's CEO) had intimate detailed knowledge of "revenue recognition policies and issues" and thus "knew that Hansen Medical's financial reports contradicted its revenue recognition policies." AC ¶ 128(c).

2. That the "Audit Committee Defendants" had intimate knowledge of Hansen's revenue recognition policies; that they discussed revenue recognition "issues" before and during the 2009 investigation of accounting irregularities; and they "knew that Hansen Medical's financial reports contradicted its revenue recognition policies." AC ¶ 133(a)-(c).

3. That "through their discussions of revenue recognition issues at board meetings during the Relevant Period" the other outside directors "acquired intimate, detailed knowledge of Hansen Medical's revenue recognition issues concerning its core produc[t], the Sensi systems" and those outside directors "knew that Hansen Medical's financial reports contradicted its revenue recognition policies." AC ¶ 136.

These allegations, however, are insufficient to support an inference that the Outside Directors knew that employees in the company were misapplying the company's revenue recognition policy. The generalized allegations that the Directors discussed revenue recognition or knew that their approved method for recognizing revenue was "of critical importance" are not sufficient. Plaintiff has failed to plead facts indicating that the Outside Directors knew or could have known that there were *problems* with the way that defendant Sells recorded revenue under the Audit Committee's approved method or that concerns with how revenue was being recognized under that method were discussed by the Board, such that a majority of the Outside Directors face a substantial risk of liability sufficient to excuse

---

[2] Plaintiff's new "core operations" cases are likewise inapposite. *See Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) (strong inference of scienter established where import restrictions would have "eliminated a potentially significant source of income for the company"); In *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358 (E.D.N.Y. 2003) (finding generalized scienter allegations insufficient, and distinguishing cases where fundamental problems with the core product or the most significant contract in company's history excused "plaintiffs from the usual rule requiring specificity").

4

demand.

In his Opposition and during oral argument plaintiff continues to rely heavily on *Pfeiffer v. Toll*, 989 A.2d 683 (Del. Ch. 2010), to support his argument that, particularly in a small company, knowledge of improper conduct related to the company's "core operations" can be inferred to board members. *Pfeiffer*, however, was an insider trading case where the outside directors were named as individual defendants in the federal securities action. As such, and as the complaint in the securities action had survived a motion to dismiss, the Court found that demand futility was established. *Id*. at 689-90. The portions of the *Pfeiffer* decision cited by plaintiff do not address the heightened "particularity" pleading standard required for demand futility under Rule 23.1, but address whether plaintiffs in that case adequately alleged insider trading under "the plaintiff-friendly Rule 12(b)(6) standard." *Id*. at 693-94. Therefore, even if this Court were to revisit its decision that the factual allegations made in *Pfeiffer* – allegations that defendants knew that the remarkably high earning projections about the "core operations" of the company were being overstated to the public because of contradictory internal company metrics – are not similar to the conclusory allegations made here – *see* Order at 5-6 – the *Pfeiffer* Court's determination that plaintiffs there had adequately alleged insider trading sufficient to pass muster under Rule 12(b)(6) does not suggest plaintiff passes the heightened "particularity standard" for demand futility here. *Id*. at 693-94 (distinguishing the insider trading case from cases contending that "outside directors should have uncovered financial fraud" and cases finding demand futility not established where the pleadings failed to "explain how the directors would have known about the accounting problems").

Plaintiff's argument that the Directors' failure to terminate defendant Sells when they had knowledge of Sells' misconduct creates a substantial likelihood of individual liability for corporate waste, has already been rejected. In the prior Order, the Court found the prior complaint's allegations on their own do not rise above the level of negligence to demonstrate bad faith conduct by the Outside Directors. *See* Order at 7-8 (distinguishing *In re Walt Disney Co. Derivative Litig*., 825 A.2d 275 (Del. Ch. 2003)). In the Amended Complaint, the only allegations about the Outside Directors' knowledge of Sells' conduct are conclusory allegations, that the "[i]ndividual Defendants were aware of Hansen Medical's culture of driving up revenues and Sells's obsession with inflating revenues" and yet "[i]n

light of Sells's egregious conduct and his role in causing the accounting irregularities at Hansen Medical, the Director Defendants acted in bad faith in allowing Sells to resign and allowing Hansen Medical to enter into the separation agreement." AC ¶¶ 85, 88. There are no new factual allegations explaining how any of the Outside Directors had or would have had knowledge of Sells' scheme, or how they wholly abdicated their responsibilities with respect to Sells' separation agreement, and therefore no support for the argument that the acts taken by the Outside Directors amount to bad faith or intentional misconduct.

Finally, with respect to "insured versus insured" exclusion for derivative actions against directors, the Court previously found that the exclusion, standing alone, does not demonstrate an inability of the Directors to disinterestedly consider a demand. Order at 8. As described in more detail below, the Amended Complaint fails to allege sufficient particularized facts, considered alone or in conjunction with an insured versus insured clause, to demonstrate demand futility.

### B.    Allegations with Respect to Audit Committee Defendants Freund, Shapiro, and Lowe

Plaintiff asserts that he has included new allegations regarding the Audit Committee members that adequately allege bad faith conduct sufficient to survive the motion to dismiss. Specifically, plaintiff points to his allegations that the Audit Committee Defendants discussed Hansen's medical revenue "issues" before and during the 2009 investigation of accounting irregularities; the Audit Committee Defendants "knew that Hansen Medical's financial reports contradicted its revenue recognition policies"; the Audit Committee Defendants abdicated "their duties in violation of the Audit Committee Charter"; and the Audit Committee Defendants allowed "Sells to resign and causing Hansen Medical to enter into a separation agreement with Sells." AC ¶ 133-134. This Court, however, already found these allegations to be deficient. Plaintiff has not alleged *facts* to support his conclusion that these outside directors knew of or even had reason to know of defendant Sells' improper revenue recognition scheme or any other problem with the way their approved revenue recognition method was being applied. *See* Order at 8-9 (distinguishing *In re Taser Int'l S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 11554 (D. Ariz. Mar. 17, 2006); *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275 (Del. Ch.

2003); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 222 (S.D.N.Y. 1999), *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007)).

As plaintiff has failed to alleged particularized facts about Outside Directors Freund's, Shapiro's or Lowe's interest – and plaintiff fails to argue that he has alleged *any* new factual allegations with respect to defendants Hirsch, Mandato and Hykes – plaintiff has failed to adequately allege demand futility with respect to a majority of the Board of Directors who were on Hansen's Board at the time plaintiff's complaint was filed.[3]

## CONCLUSION

Plaintiff has failed to allege facts to support his allegation that a majority of the Directors would be unable to exercise independent judgment in responding to a demand. As such, plaintiff has failed to adequately allege demand futility and the Court GRANTS defendants' motion to dismiss without leave to amend.

**IT IS SO ORDERED.**

Dated: November 12, 2010

SUSAN ILLSTON
United States District Judge

---

[3] As such, the Court need not consider the specific allegations regarding defendant Moll. *See* Oppo. at 16-17.